IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRANDON CLYDE KING           §
TDCJ No. 02223297,           §
                             §
        Petitioner,          §
                             §
V.                           §        No. 3:21-cv-02221-B-BN
                             §
DIRECTOR, TDCJ-CID,          §
                             §
        Respondent.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Brandon Clyde King – a Texas prisoner – was charged in Dallas
County with murder. King plead not guilty, but a jury found him guilty as charged
and sentenced him to life imprisonment. *See The State of Texas v. Brandon Clyde
King*, F-1776511-M (194th Jud. Dist. Court. Dallas Cty., Tex. Sept. 13, 2018). King's
conviction was affirmed on direct appeal. *King v. State*, No. 05-18-01116-CR, slip op.
(Tex. App. – Dallas 2020, pet. ref'd); Dkt. No. 13-11 at 12-18.

The Texas Court of Criminal Appeals (CCA) refused King's petition for
discretionary review (PDR). *King v. State*, PDR No. 0363-20 (Tex. Crim. App. Sept.
16, 2020).

King filed a state habeas application, but the CCA denied it without written
order. *Ex parte King*, WR-92,829-01, (Tex. Crim. App. July 14, 2021); Dkt. No. 13-24.

King then filed an application for federal habeas relief pursuant to 28 U.S.C. §
2254, which he later amended. *See* Dkt. Nos. 3, 7, 8. The Court referred this action to

the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) pursuant to a standing order of reference from United States District Judge Jane J. Boyle.

The State responded to King's application. *See* Dkt. No. 19. King filed a reply. Dkt. No. 20.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny King's application for a writ of habeas corpus.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted,

2

AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on

3

their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only

4

the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal

quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not

only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination." *Will*, 978 F.3d at 942 (emphasis in original). In other words, habeas relief is unwarranted if the state court's ultimate conclusion would not have changed even if it got the disputed factual determination right. *See id.*

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a

petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

King presented the following claims in his original federal habeas petition:

1. Ineffective assistance of trial counsel for:

   a. Failing to investigate and present a "mitigating competency defense;"

   b. Making statements to the jury that undermined his defense; and

   c. Failing to protect the record with a "'bystander's report'" or otherwise "preserve prejudicial errors for appeal;"

2. Ineffective assistance of appellate counsel for failing to raise:

   a. Ineffective assistance of trial counsel; and

   b. Denial of a lesser included offense instruction;

3. Trial court error for:

   a. Failing to dismiss counsel;

   b. Asking counsel to restrict his role at *voir dire*; and

   c. Denying a lesser included offense instruction.

King presents the following claims in his amended petition:

1. The trial court abused its discretion by not allowing a lesser included offense instruction;

2. Ineffective assistance of appellate counsel for failing to raise the issue of denial of a lesser included offense instruction; and

3. Ineffective assistance of trial counsel for

    a. Failing to investigate King's mental health history; and

    b. Suggesting to the jury that they could consider King's failure to testify.

*See* Dkt. No. 3 at 6-7; Dkt. No. 7 at 6-7.

## A. Procedural Default

The State argues that King procedurally defaulted his claim that his appellate counsel was ineffective for not arguing on direct appeal that King's trial counsel was incompetent (claim 2(a) in original petition). The undersigned agrees.

Under the AEDPA, a federal court may not grant habeas relief on any claim that the state prisoner has not exhausted in the state corrective process available to protect his rights. *See* 28 U.S.C. § 2253(b)(1)(A); *Richter*, 562 U.S. at 103. This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law."); quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989); in turn quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))). In Texas, a prisoner

must present his claims to the CCA in a PDR or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986).

And unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9.

Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this procedural bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The latter exception is "confined to cases of actual innocence, 'where the petitioner shows,

as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).

Here, King failed to present to the CCA the claim that his appellate counsel was ineffective for not arguing his trial counsel's ineffectiveness on direct appeal. *See* Dkt. No. 13-11 (PDR); Dkt. No. 13-26 at 16-43 (state habeas application). And, because the Texas abuse-of-the-writ doctrine would preclude King from raising this claim in state court now, it is procedurally defaulted, and federal habeas relief is barred absent a showing of cause and prejudice or a miscarriage of justice. *See, e.g.*, *Ashanti v. Cockrell*, No. 3:01-CV-0512-D, 2002 WL 2030721, at *3 (N.D. Tex. Aug. 30, 2002) (citing *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000); quoting, in turn, *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)).

King does not explain his failure to present this claim to the CCA. He therefore does not show cause or prejudice in relation to it. He also fails to show that the failure to consider the claim would result in a fundamental miscarriage of justice, as he has not shown his factual innocence. *See Fairman*, 188 F.3d at 644.

Thus, King procedurally defaulted his claim that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel (original claim 2a), so this claim should be rejected.

## B. Ineffective Assistance of Counsel

King claims that his trial counsel was ineffective for: failing to investigate and present mitigating evidence regarding his competency and mental health (original

claim 1(a) and amended claim 3(a)); undermining his own defense by commenting on his lack of testimony (original claim 1(b) and amended claim 3(b)); and failing to protect the record with a "bystander report" (original claim 1(c)). *See* Dkt. No. 3 at 6; Dkt. No. 7 at 7. He claims that his appellate counsel was ineffective for failing to argue that the trial court incorrectly denied lesser included offense instructions (original claim 2(b) and amended claim 2)). Dkt. No. 3 at 6; Dkt. No. 7 at 6.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts

it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas

14

review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

_____

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court

### 1. Failure to Investigate or Put on Mitigating Evidence of Mental Illness (Original Claim 1(a) and Amended Claim 3(a))

King contends that his trial counsel – despite having access to his medical records from Parkland Hospital – failed to investigate his mental health history. *See*, *e.g.*, Dkt. No. 8 at 6. He alleges that his trial counsel mistakenly indicated to the trial court that King did not have a mental illness, when in fact he did. King claims that, had his counsel been familiar with his mental health history and probed into it by getting an expert opinion on it and asking his mother about it through cross examination, the following might have happened: (1) the trial court might have found that he could not validly waive his right to counsel and that he was unable to assist in preparing a defense, and (2) the jury might have given him a less severe punishment or convicted him of a lesser crime. *See id.* at 6-7.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at

---

and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Here, King does not allege with any specificity what a further investigation or exploration into his alleged mental illness would have uncovered that was not already available to his trial counsel. Thus, conceptualized as a failure-to-investigate claim, this claim is too speculative to support relief. *See*, *e.g.*, *Matias-Pena v. United States*, Civil No. 3:19-CV-1259-K, 2022 WL 3567186, at *4 (N.D. Tex. Aug. 18, 2022) ("Here, Matias-Pena has not shown that further research or investigation would have benefitted his case, and he has not identified what exculpatory evidence such research or investigation would have yielded that was not already available to counsel…He has failed to show that counsel's performance was deficient based on an alleged failure to investigate.").

Similarly, to the extent that King is claiming his trial counsel was ineffective for not presenting mitigating evidence about his mental illness through expert testimony or through cross examination of his mother, his allegations of prejudice are too conclusory to support relief.

King claims that, had his counsel introduced evidence of his mental illness, he may have been found incompetent to stand trial. But King never identifies the mental illness he claims to have or any details about it such as his treatment history, and those details are not in the state court record, either. Given the lack of detail in the

17

state record, it is unclear whether this evidence would even be mitigating. That a defendant has a mental problem is not enough to find him incompetent to stand trial. *See Bouchillon v. Collins*, 907 F.2d 589, 593 (1990) (noting that "[n]ot all people who have a mental problem are rendered by it legally incompetent").

Instead, a defendant is only incompetent when "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). King's bare-bones allegations and the lack of any evidence in the state record preclude the undersigned from finding a reasonably probability that, but for his attorney's performance, he would have been found to lack the capacity to stand trial. *See, e.g.*, *United States v. Israel*, 838 F. App'x 856, 863 (5th Cir. 2020) (per curiam) (discussing prejudice in the context of a failure-to-investigate-competency IAC claim).

This is especially true given King's actions while representing himself – specifically, adopting his counsel's pretrial motions, questioning the potential jury and answering their questions during the jury selection process, and arguing to the trial court that potential jurors should not be excused for cause – none of which are indictive of a lack of capacity. *See* Dkt. No. 13-17 at 18, 106-148.

Similarly, King's argument that the jury might have given him a less stiff sentence had it been aware of his unspecified mental illness is based on speculation, which is insufficient to support a finding of *Strickland* prejudice. *See, e.g.*, *Nee v. Lumpkin*, Civil Action No. H-21-4192, 2022 WL 2118370, at *8 (S.D. Tex. June 13, 2022) ("An ineffective assistance of counsel claim based on speculation or conclusional

rhetoric will not warrant habeas relief."; citing *Lincecum v. Collins*, 958 F.2d at 1271, 1279 (5th Cir. 1992).

And, as discussed below, King was not entitled to a lesser included offense instruction, so the jury could not have convicted him of a lesser offense even if they were aware of his alleged mental illness.

Finally, regarding King's speculation that the trial court might not have allowed him to proceed *pro se* for some of the proceedings had it known of his mental illness history, "[t]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1999). "Competence to…waive the right to counsel is measured by the same standard as competency to stand trial." *Austin v. Davis*, 876 F.3d 757, 782 (5th Cir. 2017). As noted, King has failed to show a reasonable probability that he would have been judged incompetent to stand trial had his counsel presented evidence of his unspecified mental illness, so he also fails to show a reasonable probability that the trial court would have found him incompetent to waive his right to counsel.

In sum, because King has failed to show the requisite prejudice under *Strickland* in relation to his failure-to-investigate/failure-to-present-evidence claim, the CCA's rejection of the same was not unreasonable and this claim for habeas relief (original claim 1a and amended claim 3a) should be rejected.

### 2. Improper Remarks to Jury (Original Claim 1(b) and Amended Claim 3(b))

King claims that his trial counsel was ineffective for "suggesting to the jury that they may consider the fact that [King] did not testify." *See* Dkt. No. 7 at 7. But King's trial counsel did not tell the jury that. Instead, during closing, King's trial counsel said:

> All right. But I will also tell y'all, that I advised Brandon not to testify. I told him he had a right to testify if he wanted to, but I told him – I advised him not to testify. So if y'all are going to hold that against somebody, I ask that you hold that against me and not against him.

Dkt. No. 13-20 at 15.

The factual premise of this claim is flawed. King cannot show that his counsel was ineffective for making this statement or that he was prejudiced by it.

King has failed to show that the CCA's rejection of this claim was unreasonable, and this claim for habeas relief (original claim 1b and amended claim 3b) should be rejected.

### 3. Failure to File a "Bystander Report" (Original Claim 1(c))

King claims that his trial counsel was ineffective for not protecting the record with a "bystander's report." Dkt. No. 3 at 6. But King does not explain what a "bystander's report" is or how he was prejudiced by his trial counsel not filing one. Nor is it evident from his state writ application.

King has failed to show either ineffectiveness or prejudice in relation to this claim or that the CCA's rejection of it was unreasonable. This claim for habeas relief (original claim 1c) should be rejected.

### 4. Failure of Appellate Counsel to Challenge Denial of Lesser Included Offense Instruction (Original Claim 2b and Amended Claim 2)

King claims that his appellate counsel was ineffective for not arguing that the trial court erred in denying a lesser included offense instruction. Dkt. No. 3 at 6; Dkt. No. 7 at 6. As noted, the *Strickland* standard applies to IAC claims directed at appellate counsel. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Counsel has a professional duty to choose among potential issues, according to his or her judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *See Jones*, 463 U.S. at 752. Thus, to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable. *See United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citing *Strickland*, 466 U.S. at 687). To prove prejudice in this context, the petitioner must show that but for counsel's deficient performance, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Here, King's trial counsel requested lesser included instructions on voluntary manslaughter, aggravated assault with a deadly weapon, and criminal negligent homicide. Dkt. No. 13-20 at 7. The trial court rejected the lesser included instructions because "there was no testimony or evidence presented to warrant the inclusion of lesser included charge – offenses added to the charge." *Id.*

21

Under Texas law, courts use a two-part analysis to determine whether a defendant is entitled to a jury instruction on a lesser-included offense. *See*, *e.g.*, *Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013) (citing *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)). First, the court must consider whether the offense contained in the requested instruction is a lesser included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). If it is, the court must then determine whether the evidence admitted at trial supports the instruction. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). The second part of this test requires the existence of some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty <u>only</u> of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (en banc).

In this case, King's trial counsel sought instructions for voluntary manslaughter, aggravated assault with a deadly weapon, and criminal negligent homicide. All these crimes can be lesser included offenses of murder. *See Ybarra v. State*, 890 S.W.2d 98, 108 (Tex. App. – San Antonio, 1994, pet. ref'd) (citation omitted). So, the question becomes whether there was sufficient record evidence to support the instructions.

Murder is statutorily defined under Texas law as intentionally or knowingly causing the death of another, or alternatively, intentionally or knowingly causing serious bodily injury to another by committing an "act clearly dangerous to human life," resulting in that person's death. TEX. PENAL CODE ANN. § 19.02. A person acts

intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* at § 6.03(a). A person acts knowingly when he is aware of the nature of the nature of his conduct and that his conduct is reasonably certain to cause the result. *Id.* at § 6.03(b).

Manslaughter requires a finding that the defendant "recklessly cause[d] the death of an individual." TEX. PENAL CODE ANN. § 19.04(a). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* at § 6.03(c). A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* at § 19.05(a). A person acts with criminal negligence when he ought to be aware of a substantial and unjustifiable risk that the result will occur. *Id.* at § 6.03(d).

And, as for aggravated assault with a deadly weapon, a person commits this offense when he "intentionally or knowingly threatens another with imminent bodily injury" while "us[ing] or exhibit[ing] a deadly weapon." *Id.* at §§ 22.01(a)(2), 22.02(a)(2).

Thus, considering those definitions, for King to have been entitled to the instructions that he wanted, there had to be some affirmative evidence in the record sufficient for a rational jury to acquit King of murder and convict him of a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

In support of this claim, King points to evidence that: (1) when asked what happened to the victim, he initially told a police officer that "she came home last night

from a party and said that she got beat up"; (2) the medical examiner testified that the victim received her  injuries within twelve hours of her death and might have survived if she got attention sooner; (3) he attempted to perform life saving measures on the victim; (4) he did not flee after the incident and instead called for help; and (5) King's mother – in testimony that the trial court excluded – testified that King and the victim got into physical fights before the incident at issue. *See* Dkt. No. 20 at 6; Dkt. No. 8 at 4; *see also* Dkt. No. 13-18 at 209 (order from trial court excluding testimony from King's mother).

But King's statement to an officer that some other individual beat up the victim at a party; the medical examiner's testimony concerning the victim's time of death; the fact that King attempted life-saving measures after the incident; and the fact that King did not flee after killing the victim and called for help do not allow a juror to rationally conclude that, if King were guilty, he was only guilty of a lesser offense. None of that evidence is necessarily inconsistent with the mental state necessary to support a murder conviction.

And, as for the excluded testimony from King's mother about prior fights between King and the victim, because this evidence was ruled inadmissible and the jury never heard it, it has no bearing on the lesser included instruction analysis. *See, e.g.*, *Bullock v. State*, 509 S.W.3d 921, 924-25 (Tex. Crim. App. 2016) (noting that the second step of the lesser-included-instruction analysis requires the examination of "all the evidence <u>admitted at trial</u>"); emphasis added; citing *Goad*, 354 S.W.3d at 446.

The trial court was correct in prohibiting the lesser included offense instructions, which in turns means that King fails to show a "reasonable probability" that he would have prevailed on appeal on this issue. *See Smith*, 528 U.S. at 285. In short, the CCA's rejection of this claim was reasonable. This claim for habeas relief (original claim 2b and amended claim 2) should be rejected.

### C. Trial Court Error

King claims that the trial court erred by not dismissing his trial counsel and in restricting his trial counsel's role during *voir dire* when King had elected to proceed *pro se*. *See* Dkt. No. 3 at 7; Dkt. No. 7 at 6. He also claims that the trial court erred in denying his request for a lesser included offense instruction. *See id.*

### 1. Claims Related to Trial Counsel (Original Claims 3(a)-(b))

King claims that the trial court should have dismissed his trial counsel and replaced him with someone else. His claim of trial court error appears to be premised on a belief that he is entitled to the attorney of his choice. But he is not. "[I]ndigent defendants have no right to appointed counsel of their choice." *United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007); *see also Burdine v. Huffman*, 229 F.Supp.2d 704, 709 (S.D. Tex. 2002) ("Although indigent defendants have a right to counsel, they generally do not have a right to choose their counsel."; citing *Cantu-Tzin v. Johnson*, 162 F.3d 295, 300 (5th Cir. 1998); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984))).

King has not shown that the CCA's rejection of this claim was contrary to or involved an unreasonable application of clearly established federal law, or that it was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). This claim for habeas relief (original claim 3(a)) should be rejected.

Next, King argues that the trial court erred when it asked his trial counsel to restrict the assistance that he was providing to King in his capacity as stand-by counsel after King decided to proceed *pro se* for the *voir dire* proceedings and the opening statements of trial.

This claim is meritless. When a criminal defendant elects to proceed *pro se* as King did here until changing his mind during trial, the trial court may appoint stand-by counsel to assist the *pro se* defendant in his defense. *Lefevre v. Cain*, 586 F.3d 349, 353 (5th Cir. 2009) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 170 (1984)). There are two limits on the participation of stand-by counsel: "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury…. Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *McKaskle*, 465 U.S. at 178.

So, here, the trial court was required to limit King's trial counsel's role as stand-by counsel so that King preserved actual control over the case. To give stand-by counsel unfettered ability to manage the case would have violated King's right to proceed *pro se.*

The trial court did not err in limiting the scope of King's trial counsel's role in a stand-by capacity, and King fails to show that the CCA's rejection of this claim was

contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). This claim for habeas relief (original claim 3(b)) should be rejected.

### 2. Failure to Allow Lesser Included Offense Instruction (Original Claim 3(c) and Amended Claim 1)

King claims that the trial court erred under state law by refusing to provide the jury with lesser included offense instructions. But, "[i]n a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985) (holding lesser included offense instruction is not a federal constitutional matter in non-capital cases).

And, at any rate, as discussed above, the trial court's decision not to provide a lesser included offense instruction was not error under state law.

In short, King is not entitled to federal habeas relief on this claim (original claim 3(c) and amended claim 1), and it should be rejected.

### Recommendation

The Court should deny King's application for federal habeas relief.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: April 14, 2023.

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE